UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JIN ZHI BI,
    *Plaintiff*,

v.

QIN JU XIA,
    *Defendant*.

No. 3:18-cv-23 (JAM)

**ORDER GRANTING DEFAULT JUDGMENT ON LIABILITY AND GRANTING PLAINTIFF'S MOTION TO STRIKE PLEADINGS**

The plaintiff, a masseuse employed at the defendant's massage parlor, sued the defendant for working upwards of 70-hour weeks without proper pay. The defendant has not complied with several court orders and ceased participating in the litigation. The plaintiff has moved to strike the defendant's pleadings and for default judgment. For the reasons set forth below, I will grant the plaintiff's motion to strike and further sanction the defendant by entering a judgment of default as to liability on two of the five counts of the complaint. The plaintiff shall henceforth file a submission to calculate and substantiate her claim of damages with respect to these two counts for which the defendant is liable. In light of the Court's granting of default judgment on liability, the Court cancels the scheduled trial of this action.

### BACKGROUND

The following facts are taken from the complaint filed by plaintiff Jin Zhi Bi. From September 2013 to January 2018, Bi was employed as a massage therapist at Kung Fu Massage, a massage parlor in Milford, Connecticut.[1] The defendant Qin Ju Xia is an owner, officer, shareholder, and manager of ABC Corp., a Connecticut corporation that owns and operates Kung Fu Massage.[2] Xia had the power to hire and fire employees at Kung Fu Massage, establish their

---

[1] Doc. #1 at 2–3 (¶¶ 8–9, 14–15).
[2] *Id.* at 3 (¶¶ 9–10).

1

wages, set their work schedules, and maintain their employment records.[3] Xia and ABC Corp. generated over $500,000 in annual revenue between 2014 and 2017.[4] ABC Corp. handled goods that moved in interstate commerce.[5]

During her employment, Bi regularly worked from around 10 to 10:30 a.m. to around 9 p.m. every day of the week.[6] She was not allowed to leave Kung Fu Massage's premises, and she had to be on call throughout the day.[7] She was not given breaks during which she was completely relieved from duty.[8]

Bi received no base salary. Instead, she was paid by commission, taking home 40–60% of the price of each massage she provided.[9] This worked out to $400 to $800 per week.[10] Bi also made about $350 per week in tips, which ABC Corp. and Xia told her would be used as "tip credit" to deduct against the minimum wage.[11] Bi did not receive overtime compensation.[12]

Between April 2014 and December 2016, ABC Corp. and Xia failed to pay Bi approximately $5,000 in commissions she was owed.[13] There was a two-week period in May 2015 and a one-week period in July 2017 during which ABC Corp. and Xia did not pay Bi any commission.[14] In addition, ABC Corp. and Xia did not adopt any means to accurately record the number of hours Kung Fu Massage's employees worked, did not post a notice explaining the Fair Labor Standards Act ("FLSA"), did not post a notice explaining Kung Fu Massage's

---

[3] *Ibid.* (¶ 10).
[4] *Ibid.* (¶ 11).
[5] *Ibid.* (¶ 12).
[6] *Id.* at 8 (¶ 30).
[7] *Ibid.* (¶ 30).
[8] *Ibid.* (¶ 30).
[9] *Ibid.* (¶ 31).
[10] *Id.* at 8–9 (¶ 31).
[11] *Id.* at 9 (¶ 33).
[12] *Ibid.* (¶ 34).
[13] *Ibid.* (¶ 32).
[14] *Id.* at 9 n.2.

employment practices and policies with regard to wages, vacation pay, sick leave, health and welfare benefits, and comparable matters, and did not advise employees in writing, at the time of hiring, of their rate of renumeration, hours of employment, and wage payment schedules.[15] All of these actions were done willfully.[16]

On January 3, 2018, Bi filed a complaint in federal court alleging the following five counts against Xia and ABC Corp.

- Count One alleges that Xia and ABC Corp. violated the FLSA, 29 U.S.C. § 201 *et seq.*, by failing to pay the minimum wage in violation of § 206(a)(1), failing to pay overtime in violation of § 207(a)(1), and failing to keep employment records in violation of § 211(c).[17]

- Count Two alleges that Xia and ABC Corp. violated the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.*, by failing to pay the minimum wage for all hours worked in violation of Conn. Gen. Stat. § 31-60, failing to pay overtime in violation of § 31-60, failing to distribute employment records in violation of § 31-13a, failing to keep employment records in violation of § 31-66, failing to post a notice regarding employment practices and policies in violation of § 31-71f, failing to advise employees in writing, at the time of hiring, of their rate of renumeration, hours of employment, and wage payment schedules in violation of § 31-71f, and failing to provide 30 consecutive minutes for a meal within a 7.5 hour time period in violation of § 31-51ii(a).[18]

---

[15] *Id.* at 9–10 (¶¶ 35–38).
[16] *Id.* at 9–11 (¶¶ 36–38, 44–45, 47, 51–56), 16.
[17] *Id.* at 10–11 (¶¶ 42–49).
[18] *Id.* at 11–13 (¶¶ 50–59).

- Count Three alleges that Xia and ABC Corp. breached their employment contract with Bi by failing to pay the wages Bi was owed.[19]

- Count Four alleges that Xia and ABC Corp. breached the implied covenant of good faith and fair dealing by failing to pay the wages Bi was owed.[20]

- Count Five alleges an unjust enrichment claim against Xia and ABC Corp. for failing to pay the wages Bi was owed.[21]

Bi seeks monetary damages, declaratory relief, and equitable relief, as well as interest and costs.[22] Although the complaint also sought class action relief, Bi's counsel has advised that he seeks relief only for Bi and does not seek class action relief.

## PROCEDURAL HISTORY

In February 2018, Xia answered the complaint and lodged a counterclaim against Bi for failing to comply with the business agreement between Xia and Bi and for bringing a frivolous lawsuit.[23] Bi moved to dismiss Xia's counterclaim, to which Xia filed a brief in opposition.[24] The Court found that the counterclaim sufficiently stated a cause of action for vexatious litigation and thus denied Bi's motion. *See Bi v. ABC Corp.*, 2018 WL 11391081 (D. Conn. 2018) (Covello, J.).

Xia did not comply with the Court's scheduling order or discovery order.[25] In April 2021, Xia, who speaks Mandarin, appeared *pro se* and without a translator at a settlement pre-

---

[19] *Id.* at 13 (¶¶ 60–67).
[20] *Id.* at 14 (¶¶ 68–75).
[21] *Id.* at 14–15 (¶¶ 76–79).
[22] *Id.* at 15–16 (¶¶ a–l).
[23] Doc. #7.
[24] Doc. #8; Doc. #12.
[25] *See* Doc. #17; Doc. #25; Doc. #27; Doc. #29.

conference before Judge Thomas O. Farrish.[26] Judge Farrish informed Xia via docket order that it is the parties' responsibility to furnish a translator if needed.[27]

In December 2022, I dismissed ABC Corp. because Bi did not provide proof that ABC Corp. was properly served within the allotted timeframe.[28]

In January 2023, I held a pretrial status conference with Bi and Xia, who appeared *pro se* and without a translator. I noted that Xia's command of oral English was limited, even as I pointed out that Xia had previously filed documents in English in this case.[29] During the conference, I provided her a written notice that I was going to reschedule the conference and that she must bring a translator to the rescheduled conference.[30] I also warned Xia that if she failed to appear at the rescheduled conference or appeared without a translator, I would let Bi file a motion for default judgment.[31] I repeated these admonitions in a docket order filed the same day.[32]

Xia appeared *pro se* and with a translator at the rescheduled pretrial conference in February 2023, where I set deadlines for parties' submissions of their witness and exhibit lists, proposed jury instructions, proposed *voir dire*, and motions *in limine*.[33] At the conference, Bi alleged that Xia failed to comply with her discovery requests and with the Court's order granting the motion to compel. I gave Xia one month to cure the failure to produce discovery and told her that if she did not comply, I would allow Bi to move for sanctions.[34]

---

[26] Doc. #40.
[27] *Id.*
[28] Doc. #49.
[29] Doc. #55; *see* Doc. #7; Doc. #12.
[30] Doc. #55.
[31] *Id.*
[32] *Id.*
[33] Doc. #62.
[34] *Id.*

Xia did not submit a witness and exhibit list by the deadline, and Bi moved for sanctions due to Xia's continued failure to participate in discovery.[35] Specifically, Bi sought to preclude Xia from using documents she never produced for Bi during discovery and also sought attorney's fees.[36] In March 2023, I ordered Xia to respond to Bi's sanctions motion, warned Xia that if she did not file a timely response to Bi's sanctions motion, I may enter default judgment against her for willful failure to comply with the Court's orders and to participate in good faith in the litigation, and further noted that I would independently consider whether to preclude Xia from introducing any evidence at trial due to her failure to submit a witness and exhibit list.[37]

Xia did not respond to Bi's sanctions motion, which I granted in April 2023 due to Xia's willful failure to comply with discovery and with the Court's orders.[38] I further sanctioned Xia by precluding her from calling any witnesses or introducing any evidence at trial.[39]

In June 2023, Bi moved to strike Xia's answer and counterclaim to her complaint.[40] The motion is captioned as a motion to strike, but in the accompanying memorandum, Bi appears to request default judgment as an additional sanction.[41] Bi further noted that Xia has not paid the monetary sanction I imposed in April 2023.[42]

---

[35] Doc. #65; Doc. #66.
[36] Doc. #65; Doc.# 66.
[37] Doc. #69.
[38] Doc. #70.
[39] *Id*.
[40] Doc. #71. Bi moved to strike Xia's "counterclaims," Doc. #71 at 1, but Xia lodged only one counterclaim, *see* Doc. #7 at 3; Doc. #14.
[41] Doc. #71, *see* Doc. #72 at 5 ("Plaintiff respectfully request[s] that the Court strike Defendant's pleadings and allow an entry of judgment by default."). *But see* Doc. #72 at 16 ("After receiving the Court's numerous warnings of an adverse and dispositive sanction of default judgment, a sanction of striking pleadings in whole, which is a lesser sanction than the entry of default judgment, is warranted.").
[42] Doc. #72 at 13; *see* Doc. #70 (imposing "$9,217.50 in the reasonable attorneys' fees incurred by and documented by plaintiff resulting from plaintiff's attempts to obtain discovery documents from defendant").

I ordered Xia to respond to Bi's sanctions motion and warned her that if she did not file a timely response by July 5, 2023, it may result in the entry of default judgment.[43] On July 20, 2023, Xia filed a late response.[44]

## Discussion

### *Default judgment standard*

When a court enters a default judgment, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019).[45] Unlike allegations pertaining to liability, however, allegations concerning damages are not deemed admitted. *See Cement & Concrete Workers Dist. Council Welfare Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Courts may impose sanctions as severe as default judgment for violating discovery or scheduling orders when failure to comply with a court order is due to "willfulness or bad faith, or is otherwise culpable." *Chevron Corp. v. Donziger*, 833 F.3d 74, 147 (2d Cir. 2016); *see* Fed. R. Civ. P. 37(b)(2)(A)(vi); Fed. R. Civ. P. 16(f)(1)(C). In evaluating whether it is appropriate to impose such an extreme remedy, courts consider the degree of willfulness, the efficacy of lesser sanctions, the duration of noncompliance, and whether the noncompliant party was warned that noncompliance would be sanctioned. *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013). The Rule 37 factors are not exclusive, and they "need not each be resolved against" the noncompliant party to justify default judgment. *SEC v. Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013).

---

[43] Doc. #74.
[44] Doc. #75.
[45] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

7

Xia was adequately warned that continuing noncompliance would result in a default judgment sanction by (1) my order in January 2023 advising Xia that "if Xia fails to appear as required on February 7 or if she appears but without a capable translator, the Court will allow the plaintiff to file a motion for sanctions in the form of a default judgment against Xia on the ground of her failure to cooperate with the Court's order;" (2) my order in March 2023 advising Xia that if she did not file a timely response to Bi's motion to sanction her for failing to participate in discovery or comply with the court's discovery orders, I "may enter a default judgment against the defendant for willful failure to comply with the Court[']s orders and to participate in good faith in the litigation of this action;" and (3) my order in June 2023 that "the failure to file a timely objection or response to plaintiff[']s motion may result in the entry of default judgment against the defendant and without any trial or other adjudication of this matter."[46] *See Guggenheim Cap.*, 722 F.3d at 452–53 (adequate notice of default judgment sanction provided to *pro se* party when district court repeatedly advised him of the risk of sanctions yet he failed to respond even after the other party moved for default judgment); *Isigi v. Dorvilier*, 795 F. App'x 31, 33 n.1 (2d Cir. 2019) (affirming default judgment in dicta when "[d]efendants repeatedly failed to comply with the Magistrate Judge's discovery and scheduling orders, notwithstanding multiple warnings that continued noncompliance would result in a default.").

I find that a default judgment is the appropriate sanction in this case and that any lesser sanction would be futile in light of Xia's willful and near-total refusal to cooperate with this litigation since she filed her notice of appearance in February 2018, including a willful, monthslong refusal to comply with unambiguous discovery obligations and scheduling orders.

---

[46] Doc. #55 (emphasis omitted); Doc. #69 (emphasis omitted); Doc. #74.

8

*See Guggenheim Cap.,* 722 F.3d at 451–53 (default judgment sanction appropriate where party's "intransigence spanned months" and "less serious sanctions would have been futile").

Accordingly, I will sanction Xia by entering default judgment against her on all adequately pleaded claims pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) and Fed. R. Civ. P. 16(f)(1)(C). To assess the propriety of default judgment on these claims, I must accept as true all factual matters alleged in the complaint and draw all reasonable inferences in Bi's favor to determine whether Xia is liable on each claim. *See Roberts v. Bennaceur*, 2015 WL 1471889, at *17 (D. Conn. 2015), *aff'd*, 658 F. App'x 611 (2d Cir. 2016); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.").

### *Motion to strike pleadings*

Before addressing Xia's liability, however, I will first address Bi's motion to strike Xia's answer and counterclaim. The Federal Rules of Civil Procedure permit a district court to strike a party's pleadings when the party fails to comply with its orders. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii); Fed. R. Civ. P. 16(f)(1)(C). Bi has moved to strike Xia's answer and counterclaim from the record due to Xia's failure to comply with the Court's pretrial orders and Bi's discovery requests.[47] As explained above, Xia has repeatedly refused to comply with the Court's orders pertaining to discovery, scheduling, and other pretrial matters. Courts have stricken nonresponsive parties' answers and counterclaims in similar circumstances. *See, e.g.*, *Chopen v. Olive Vine, Inc.*, 2014 WL 198814, at *3 (E.D.N.Y. 2014) (striking defendants' answer and entering default judgment when defendants "failed to respond to discovery requests,

---

[47] Doc. #71; Doc. #72.

9

pay Court-ordered sanctions and participate in Court conferences"); *HSBC Bank USA, Nat'l Ass'n as Tr. for Fremont Home Loan Tr. 2006-A Mortg.-Backed Certificates, Series 2006-A v. Harris*, 2021 WL 5501711, at *5–8 (D. Conn. 2021) (dismissing plaintiff's counterclaims due to repeated and willful noncompliance with the court's discovery orders); *Zhu v. Matsu Corp*, 2022 WL 972422, at *12–14 (D. Conn. 2022) (striking defendants' answer due to repeated and willful noncompliance with the court's discovery orders).

      Xia's response to Bi's motion to strike asserts that she was not properly served with the motion and that "I never agreed that document service by email is a way of accepting the service."[48] But this claim ignores that the Court has previously granted Xia's own motion to participate in electronic filing in this case.[49] In this motion, she stated that "I consent to the court and opposing counsel using my email address, as listed below, for the purposes of sending me electronic notification of orders, notices, and other documents that are filed in my case," and that "I understand that hard copies will no longer be issued by the court or opposing counsel."[50] In addition, the Court entered an order following the grant of Xia's motion to participate in electronic filing stating that "[t]he defendant has signed up for electronic notification of entries on the docket. It is the defendant's responsibility to check the docket regularly and to stay apprised of any orders or filings that may appear on the docket."[51]

      It is frivolous for Xia to now claim that email service was improper or that she has not received proper notice of filings or orders in this case. Moreover, apart from this frivolous objection to the manner of service, Xia's response to the motion to strike makes no effort to

---

[48] Doc. #75.
[49] Doc. #58 (motion); Doc. #60 (order).
[50] Doc. #58.
[51] Doc. #62.

show that she has otherwise complied with prior discovery and court orders in this case. Accordingly, I will grant Bi's motion to strike Xia's answer and counterclaim.[52]

### *Count One - FLSA*

The FLSA requires covered employers to pay "employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 533 (2d Cir. 2015) (citing 29 U.S.C. §§ 206–207). The FLSA further requires covered employers to "make, keep and preserve … records" of their employees with respect to "wages, hours, and other conditions and practices of employment" for a certain period of time. 29 U.S.C. § 211(c).

To establish a claim under the FLSA's minimum wage or overtime compensation provisions, a plaintiff must show (1) that she is an "employee" of the defendant within the meaning of the FLSA and (2) that either the employer or the employee is engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a)(1), 207(a)(1); *see Cabrera v. Canela*, 412 F. Supp. 3d 167, 178 (E.D.N.Y. 2019).

Bi has satisfied both elements. Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Because Bi alleges that Xia employed her within this statutory meaning, and because I see no basis for exempting the employment relationship between Bi and Xia from the FLSA's provisions, "it follows … that for purposes of this default, [s]he qualifies as an 'employee' under the FLSA." *Garcia v. Badyna*, 2014 WL 4728287, at *5 (E.D.N.Y. 2014); *see* 29 U.S.C. § 213(a)–(b) (setting forth the exemptions to §§ 206 and 207).

---

[52] Again, it is unclear whether Bi also seeks default judgment. *See supra* note 41. Because I have decided to enter a judgment of default against Bi as a sanction for noncompliance with the court's orders, however, I address Bi's motion for sanctions only to the extent that it requests that I strike Bi's pleadings.

11

Further, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" to include "an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). ABC Corp. qualifies as such an enterprise given Bi's allegations that ABC Corp. generated over $500,000 in annual revenue between 2014 and 2017 and handled goods moved in interstate commerce. *See, e.g.*, *Wei v. Sichuan Pepper, Inc.*, 2022 WL 385226, at *6–7 (D. Conn.), *rep. and rec. adopted*, 2022 WL 382019 (D. Conn. 2022); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011).

The FLSA defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In *Carter v. Dutchess Community College,* 735 F.2d 8 (2d Cir. 1984), the Second Circuit set forth four factors to determine whether there is an employer-employee relationship between an individual defendant and an FLSA plaintiff: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12; *accord Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013).

Bi alleges that Xia had the power to hire and fire employees at Kung Fu Massage, established her wages, and set her work schedules. At the same time, however, she alleges that Xia failed to keep employment records. So Bi's allegations satisfy three of the four *Carter* factors, and the fourth forms part of the basis for Bi's FLSA claim itself. Accordingly, Xia qualifies as Bi's employer within the meaning of the FLSA. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015) (finding that defendants were employers under the FLSA when they satisfied three of the four *Carter* factors and noting that

"[t]he fact that Individual Defendants did not keep employment records does not undermine this finding because no employment records were kept").

That brings me to whether the complaint alleges grounds for Xia to be liable for violating the FLSA. With respect to the FLSA's minimum wage requirement, an employee bringing an action for illegal under-compensation under the FLSA bears the burden of proving that she performed work for which she was not properly compensated. *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003). In the absence of employer records, *see* 29 U.S.C. § 211(c), the employee may do this solely through her own recollection and estimates. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83–84 (E.D.N.Y. 2012). When the employer has defaulted, "the employees' recollection and estimate of hours worked are presumed to be correct." *Jemine v. Davis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012).

Bi alleges that Xia withheld $5,000 in compensation from April 2014 to December 2016, and that there was a two-week period in May 2015 and a one-week period in July 2017 during which Xia failed to pay Bi any compensation at all. Accordingly, I conclude that Xia is liable for violating 29 U.S.C. § 206(a)(1)(C), the FLSA's minimum wage provision.

With respect to the FLSA's overtime pay requirement, the FLSA requires employees to be "compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. N.Y.–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). "In order state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Although a FLSA plaintiff need not "keep careful records and plead their hours with mathematical precision," at least "some factual context" is

necessary to "nudge [a plaintiff's FLSA overtime] claim 'from conceivable to plausible.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).

Bi alleges that she regularly worked from 10 to 10:30am to around 9pm every day of the week—in total, at least 73.5 hours per week. Courts have permitted FLSA claims to proceed with similar or less factual context than what Bi provided. *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 44 ("Plaintiffs provide the Court with concrete allegations regarding the overtime that they worked. For example, Mr. Fermin states that he worked over forty hours a week from April 18, 2005 until March 24, 2013 without exception."); *Leon v. Zita Chen*, 2017 WL 1184149, at *7 (E.D.N.Y. 2017) ("Plaintiff reports that he regularly worked sixty hours per week over the course of six days while employed by defendants. Accordingly, the court finds that defendants are liable under the FLSA … for not paying plaintiff his overtime premium."); *Nuno Carrera v. DT Hosp. Grp.*, 2021 WL 1164181, at *4 (S.D.N.Y. 2021) ("Plaintiffs allege that for the duration of their employment, they worked either six or seven days per week for a total of between 57 and 67.5 hours per week, and that DT Hospitality failed to compensate them at the higher rate for their time worked in excess of forty hours per week. Indeed, Plaintiffs were paid a fixed daily rate of pay, regardless of the number of hours they worked that day or week. These allegations are sufficient to state a claim for failure to pay overtime wages in violation of the FLSA"). Accordingly, I find Xia liable to Bi for failing to pay her overtime compensation in violation of 29 U.S.C. § 207(a)(1).

Finally, § 211(c) of the FLSA requires covered employers to "make, keep and preserve … records" of their employees. But "[t]here is no private right of action to enforce 29 U.S.C. § 211(c)." *Fuk Lin Pau v. Jian Le Chen*, 2015 WL 6386508, at *6 (D. Conn. 2015); *see also Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002) ("Authority to

14

enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor."). Therefore, even though Bi plausibly alleges that Xia did not adopt any means to accurately record the number of hours Kung Fu Massage's employees worked, I will not grant default judgment on Bi's record-keeping claim brought pursuant to 29 U.S.C. § 211(c).

### *Count Two - CMWA*

FLSA claims and CMWA claims are analyzed under substantially the same standard. *See Idrovo v. Elegant Nail Salon & Spa LLC*, 2020 WL 13664731, at *2 (D. Conn. 2020); *Andrade v. Kwon*, 2012 WL 3059616, at *4 (D. Conn. 2012), *Scott v. Aetna Servs.*, Inc., 210 F.R.D. 261, 263 n. 2 (D. Conn. 2002).

That said, the CMWA defines "employer" differently than the FLSA. Under the CMWA, an employer includes "any owner or any person … acting directly as, or on behalf of, or in the interest of an employer in relation to employees." Conn. Gen. Stat. § 31-58(d). The Connecticut Supreme Court has held that the term "employer" for purposes of the CMWA "encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler v. Hartford Tech., Inst., Inc.*, 243 Conn. 454, 462 (Conn. 1997); *see, e.g.*, *Tahirou v. New Horizon Enterprises, LLC*, 2023 WL 2613506, at *6–8 (D. Conn. 2023) (applying this definition of "employer" to CMWA claim); *Tapia v. Mateo*, 96 F. Supp. 3d 1, 5 (D. Conn. 2015) (same). "An individual personally can be liable as an employer" under the CMWA, "notwithstanding the fact that a corporation is also an employer of the claimant." *Butler*, 243 Conn. at 463. Bi alleges that Xia is an owner, officer, shareholder, and manager of ABC Corp. and that Xia had the power to hire and fire employees, establish their wages, set their work schedules, and maintain their employment records. Taking these allegations as true, I conclude that Xia satisfies the CMWA's definition of "employer."

As relevant here, a CMWA claim otherwise tracks an FLSA claim. *See Idrovo*, 2020 WL 13664731, at *2.[53] For the same reasons that I determined Xia to be liable for violating the FLSA's minimum wage and overtime provisions, I conclude that Xia is liable for violating the CMWA's minimum wage and overtime pay provision (Conn. Gen. Stat. § 31-60).

In addition to alleging that Xia violated § 31-60, Count Two alleges a number of additional violations of the CMWA, which I turn to next.

The CMWA prohibits employees from "work[ing] for seven and one-half or more consecutive hours without a period of at least thirty consecutive minutes for a meal." Conn. Gen. Stat. § 31-51ii(a). Because Bi alleges that Xia failed to do exactly that, I conclude that Xia is liable for violating Conn. Gen. Stat. § 31-51ii(a).

As to Bi's claims regarding Xia's failures to keep, distribute, and post records or notices in violation of §§ 31-13a, 31-66, and 31-71f, however, I will decline to grant default judgment for the same reason I declined to grant default judgment on Bi's FLSA record-keeping claim. "[N]either federal nor state law provides a private right of action to plaintiffs to enforce the record-keeping and notice-posting requirements in a civil action." *Fuk Lin Pau*, 2015 WL 6386508, at *6.

---

[53] The FLSA and the CMWA differ in their statutes of limitations. The FLSA provides for a two-year statute of limitations for enforcement of its provisions, or a three-year statute of limitations for "willful" violations. 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Sanchez v. Ms. Wine Shop Inc.*, 2022 WL 17368867, at *6 n.2 (E.D.N.Y. 2022). Unlike the FLSA, the CMWA has a blanket two-year statute of limitations. Conn. Gen. Stat. § 52–596. Certain parts of Bi's complaint appear to fall outside of the applicable statutes of limitations. *Compare* Doc. #1 (filed January 3, 2018), *with* Doc. #1 at 8–10 (¶¶ 29–41) (alleging conduct beginning September 2013). The statute-of-limitations provisions of the FLSA and the CMWA are affirmative defenses that are forfeited if not timely raised by the defendant. *See Morales v. Gourmet Heaven, Inc.*, 2016 WL 6996976, at *7–8 (D. Conn. 2016); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (collecting cases). In light of Xia's default, the statute of limitations defense is waived for purposes of this default judgment ruling only.

### *Counts Three, Four, and Five - breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment*

Count Three of Bi's complaint alleges that Xia breached Bi's employment contract by failing to pay the wages Bi was owed. Count Four alleges that Xia breached the implied covenant of good faith and fair dealing, and Count Five alleges an unjust enrichment claim.

Bi alleges that she worked for ABC Corp. which owned and operated the Kung Fu Massage business and for which Xia was the owner and manager.[54] She does not plausibly allege that she had any contract with Xia distinct from her contract of employment with ABC Corp. "Generally, under Connecticut law, 'a corporation is a distinct legal entity and the stockholders are not personally liable for the acts and obligations of the corporation.'" *Clee v. Remillard Bldg., Inc.*, 649 F. Supp. 1127, 1131 (D. Conn. 1986) (quoting *DeSantis v. Piccadilly Land Corp.*, 3 Conn. App. 310, 313–14 (1985)). Although courts will pierce the corporate veil under "exceptional circumstances," courts "decline to pierce the veil of even the closest corporations in the absence of proof that failure to do so will perpetrate a fraud or other injustice." *CSX Transp., Inc. v. Blakeslee*, 2012 WL 3985169, at *5–6 (D. Conn. 2012) (quoting *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 233–34 (2010)). Accordingly, "[i]n veil piercing cases, it is the burden of the party seeking to disregard the corporate form [to show] that there is a basis for doing so." *Comm'r of Env't Prot. v. State Five Indus. Park, Inc.*, 304 Conn. 128, 142 n.15 (2012).

The corporate veil generally protects corporate-affiliated individuals from liability on claims for breach of contract. *See Naples*, 295 Conn. at 234–38. It also protects them from liability on claims for breach of the implied covenant of good faith and fair dealing. *See, e.g.*, *Utzler v. Braca*, 2008 WL 2068200, at *26 (Conn. Super. Ct. 2008), *aff'd*, 115 Conn. App. 261

---

[54] Doc. #1 at 2-3 (¶¶ 8-10).

(2009). And it also protects them from liability on claims for unjust enrichment. *See Stuart v. Stuart*, 112 Conn. App. 160, 172 (2009), *rev'd in part on other grounds*, 297 Conn. 26 (2010); *see also Jannetty Racing Enterprises, Inc. v. Site Dev. Techs., LLC*, 2006 WL 410973, at *3–5 (Conn. Super. Ct. 2006) (striking unjust enrichment claim when plaintiffs failed to allege facts to justify piercing the corporate veil); *Complete Transp., LLC v. CPM Colchester, LLC*, 2013 WL 951342, at *5 (Conn. Super. Ct. 2013) ("By failing to pierce the corporate veil … , [plaintiff] cannot and did not establish probable cause to prevail on its theories of unjust enrichment.").[55] Because Bi does not argue that ABC Corp.'s veil should be pierced, "and the record lacks any significant indication of abuse of the corporate form," *Morales v. Cancun Charlie's Rest.*, 2010 WL 7865081, at *7 (D. Conn. 2010), I will decline to grant default judgment on Counts Three, Four, or Five.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that default judgment shall enter in favor of Bi as to defendant Xia's liability under the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207, and under the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-51ii(a) and 31-60. The Court otherwise declines to grant default judgment because Bi's allegations do not establish, as a matter of law, that Xia is liable as to Bi's remaining claims.

The Court GRANTS IN PART Bi's motion for sanctions (Doc. #71) to the extent that Xia's pleadings—in particular, Xia's answer and counterclaim, *see* Doc. #7—shall be stricken from the record. To the extent Bi moves for sanctions in the form of a default judgment against

---

[55] In *Katcher SV Special Situations Master Fund Ltd. v. Knight Libertas, LLC*, 2011 WL 2680832 (D. Conn. 2011), the district court wrote that "if [an individual defendant] personally received or benefitted from any of the transfers at issue, plaintiff need not pierce the Libertas corporate veil to recover from [the individual]" on an unjust enrichment claim. *Id.* at *9. But the complaint does not allege facts to show Xia's personal benefit from Bi's services beyond the benefit received by ABC.

18

Xia, that motion is DENIED IN PART AS MOOT to the extent that the Court has already granted default judgment on Bi's legally viable claims and is otherwise DENIED.

Finally, the Court notes that Bi has not submitted any documentary materials as required to substantiate a claim for damages. Accordingly, Bi shall file on or before **August 4, 2023** any affidavits or other materials that may be necessary to substantiate the complaint's claim for damages and the award of any costs or fees. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128–29 (2d Cir. 2011); Fed. R. Civ. P. 55(b)(2). Xia shall have until **August 18, 2023** to file any objection, any request for a hearing, or other response to Bi's submission with respect to the calculation of damages. In the absence of a timely response (or motion for extension of time), the Court is likely to grant and enter an award of default judgment in the amount that is properly substantiated by Bi's submission and to enter a final judgment against Xia in Bi's favor.

The Court had previously scheduled jury selection and trial to begin next month in this case.[56] In light of the entry of default judgment on liability against the plaintiff, however, the Court cancels the trial of this action.

It is so ordered.

Dated at New Haven this 21st day of July 2023.

/s/ *Jeffrey Alker Meyer*<br>Jeffrey Alker Meyer<br>United States District Judge

---

[56] Doc. #62.