UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JIN ZHI BI,
    *Plaintiff*,

v.

QIN JU XIA,
    *Defendant*.

No. 3:18-cv-23 (JAM)

**ORDER GRANTING PLAINTIFF'S SUPPLEMENTAL MOTION FOR DEFAULT JUDGMENT AND AWARD OF DAMAGES AND ATTORNEY FEES AND COSTS**

Plaintiff Jin Zhi Bi, a masseuse previously employed at the defendant's massage parlor, Kung Fu Massage, filed suit against defendant Qin Ju Xia under the Fair Labor Standards Act ("FLSA") and the Connecticut Minimum Wage Act ("CMWA") for unpaid wages. Following a finding of default judgment as to liability, Bi now moves for an award of damages and attorney fees and costs. For the reasons set forth below, I conclude that Bi is entitled to compensatory and liquidated damages in the total amount of $51,644.30 and attorney fees and costs in the total amount of $48,290.75.

**PROCEDURAL HISTORY**

I have described the facts of this case in a prior ruling. *See Bi v. Xia*, 2023 WL 4684828 (D. Conn. 2023). On August 4, 2023, after an entry of default judgment as to liability, Bi moved for an award of damages.[1] I granted Xia's request for an evidentiary hearing.[2]

At the hearing, Bi testified that she worked for Xia from September 2013 to mid-January 2018.[3] She further testified that she worked approximately 10.5 to 11 hours per day and 7 days a week.[4] She further testified that from September 2013 to August 2016, she was paid between

---

[1] Docs. #78, #80.
[2] Docs. #82, #83, #84.
[3] Doc. #90-1 at 2 (¶ 1).
[4] *Id.* at 2 (¶ 2).

1

"$500 for a bad week" and $800 for a good week," and from mid-August 2016 to mid-January 2018, she was paid "$400 for a bad week" and "$600 or $700 for a good week."[5] She further testified that she was never paid overtime for time worked over 40 hours per week.[6] Bi also submitted contemporaneous records of her daily payments from Xia, as well as estimates of her total monthly payments and a proposed calculation of damages.[7]

Xia, appearing *pro se*, focused her testimony, as well as the testimony of her witness, Jian Ping Lu, who transported Kung Fu Massage employees to work, and her cross examination of Bi, on whether Bi went by the name of "Angela" or "Angela Li" while she worked at Kung Fu Massage.[8] Xia speculated that Bi was employed by other businesses during the period in question and continually demanded that Bi furnish her tax returns for the relevant years so that this accusation could be substantiated.

After the hearing, Bi filed an affidavit supporting her request for attorney fees and costs.[9] Xia has not filed any objection to the attorney billing and cost records. This ruling now follows.

## DISCUSSION

"The FLSA was designed to protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243 (2d Cir. 2011) (quoting 29 U.S.C. § 202(a)).[10] "An employee who brings a claim for unpaid minimum or overtime wages 'has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of [the FLSA] and the great

---

[5] *Id.* at 2–3 (¶ 4).
[6] *Id.* at 3 (¶ 7).
[7] Docs. #90-2, #90-4, #90-6, #92.
[8] *See* Doc. #92.
[9] Doc. #93.
[10] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee.'" *Modise v. CareOne Health Servs., LLC*, 638 F. Supp. 3d 159, 173 (D. Conn. 2022) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*).

If an employer fails to keep or produce sufficient "records of wages, hours and other conditions and practices of employment," an employee will satisfy his burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. At that point "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88. The CMWA provides wage and overtime protections that are similar to the FLSA. *See Tapia v. Mateo*, 96 F. Supp. 3d. 1, 5 (D. Conn. 2015).

### *Compensatory damages*

Bi may recover back pay under either the FLSA or the CMWA. 29 U.S.C. § 216(b) (allowing recovery of "payment of wages lost"); Conn. Gen. Stat. § 31–72 (granting recovery of unpaid wages). Connecticut's minimum wage during the time that Bi worked for Xia was higher than the federal minimum wage.[11] Under the FLSA, where both state and federal law apply, and the state minimum wage is higher than the federal minimum wage, the federal wage rate is calculated based on the higher state rate. *See* 29 C.F.R. § 778.5 (stating that the "regular rate at

---

[11] At all relevant times, the federal minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1). Conversely, the state minimum wage increased throughout the period as follows: $8.25 from January 1, 2010 to December 31, 2013; $8.70 from January 1 to December 31, 2014; $9.15 from January 1 to December 31, 2015; $9.60 from January 1 to December 31, 2016; and $10.10 from January 1, 2017 to September 30, 2019. Conn. Gen. Stat. § 31-58(i)(1).

which [a worker] is employed . . . cannot be lower than such applicable [state] minimum"). I have therefore calculated back pay based on the Connecticut minimum wage.

I must first calculate the wages Bi received while working at Kung Fu Massage to determine what, if any, unpaid regular wages or overtime wages she is owed. I found Bi to be generally credible and credit her testimony regarding the usual number of hours she worked per day. But I found it implausible that she worked all seven days a week for over four years. Accordingly, in calculating Bi's compensatory damages, I estimate that Bi worked for 10.5 hours per day and 6 days per week for a total of 63 hours per week for the period in question.

Bi submitted documentary evidence of daily payments she received while working at Kung Fun Massage.[12] Those records, however, were incomplete, as they did not list payments for every day Bi worked for Xia.[13] Bi also provided an estimate of monthly payments based on the recorded daily payments, but a comparison of the two records show that the monthly estimates do not always equal the totaled daily payments.[14] Finally, Bi provided a declaration and testified that she was paid between $500 and $800 from September 2013 to August 2016 and between $400 and $600 or $700 from mid-August 2016 to mid-January 2018.[15]

To the extent that Bi's documentation and recollection of payments are not identical, that is not her responsibility. Indeed, the FLSA places that burden squarely on the employer and to not credit Bi's account because of discrepancies would impermissibly shift the burden onto the employee. *See* 29 U.S.C. § 211(c) (requiring the employer to "make, keep, and preserve" employee records, including "wages" and "hours").

---

[12] Doc. #90-6.

[13] *See, e.g., id.* at 111 (listing only five recorded payments from January 2016). Bi's counsel noted at the evidentiary hearing that any omissions were not indicative of days Bi did not work, but rather reflected days for which she could not locate the corresponding records.

[14] Doc. #90-2. *Compare* Doc. #90-6 at 46 (listing seven daily payments for October 2014 totaling $966), *with* Doc. #90-2 at 3 (estimating monthly payment for October 2014 of $2,571).

[15] Doc. #90-1 at 2–3 (¶ 4).

But which estimated payments to use in calculating Bi's wages?[16] In this analysis, "[a]n employee's burden to produce sufficient evidence is low and can be met by that employee's recollection alone." *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013); *see Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (holding that "it is possible for a plaintiff to meet this burden through estimates based on his own recollection"). Accordingly, for the purposes of calculating Bi's wages while working at Kung Fu Massage, I will take the average of the figures she recalled earning during her testimony and in her declaration. I will therefore use $650 as Bi's average weekly payment from September 2013 to July 2016 and $525 from September 2016 to January 2018.[17] For August 2016, during which Bi's wages changed midway through the month, I will take the average of the prior and subsequent weekly payments, resulting in an average weekly payment of $587.50.[18] Though these figures result in a significantly lower calculation of compensatory damages than Bi estimated, Bi's counsel conceded at the evidentiary hearing that "courts have discretion in choosing a procedure for quantifying the damages, provided that the chosen procedure is sufficient to ensure that the award has an evidentiary basis."[19] *Wei v. Sichuan Pepper, Inc.*, 2022 WL 385226, at *6 (D. Conn. 2022), *report and recommendation adopted*, 2022 WL 382019 (2022).

I am unpersuaded by any of Xia's attempts to rebut Bi's evidence. As an initial matter, I did not find Xia to be credible, in part because it was clear during the evidentiary hearing that

---

[16] The period over which Bi received those wages, however, is not in question. As I noted in a previous ruling, Xia waived the FLSA and CMWA statutes of limitations defenses by defaulting. *Bi*, 2023 WL 4684828, at *8 n.53. Accordingly, the relevant period for the purposes of this award is September 1, 2013 to January 15, 2018. *See* Doc. #90-1 at 2 (¶ 1) (noting that Bi worked at Kung Fu Massage "from September 2013 to about mid-January 2018).
[17] Appendix I at 1–2. Since Bi estimated that her highest weekly payment was between $600 to $700 from mid-August 2016 to mid-January 2018, I will take the average of those figures ($650) and average that amount with Bi's lowest weekly payment ($400) to determine her average weekly payment for this period ($525).
[18] *Id.* at 2.
[19] *Compare* Doc. #90-4 at 6, *with* Appendix I at 4–5.

5

Xia recognized Bi despite her previous representation that she "d[id] not know who Jin Zhi Bi is."[20] Indeed, Xia's own witness, who regularly interacted with Kung Fu Massage employees, recognized Bi. Putting aside questions of credibility, Xia's demands for Bi's tax returns are too little too late. Xia had ample time to request these documents during discovery but, as Bi's counsel represented during the hearing, Xia made no such request. Moreover, Xia's speculation that Bi was employed at other businesses during the time in question is just that—speculation. Finally, it is immaterial to this analysis whether Bi went by "Angela" or "Angela Li" while working at Kung Fu Massage. Bi was employed there all the same.

Accordingly, on the basis of calculations set forth in the appendix to this ruling, I conclude that Bi is entitled to compensatory damages of $25,822.15 (consisting of $3,720.76 in unpaid regular wages and $22,101.39 in overtime wages).[21]

### *Liquidated damages*

Bi also seeks recovery of liquidated damages under the FLSA and CMWA for her minimum wage and overtime claims.[22] Under the FLSA, successful plaintiffs may collect "the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The CMWA awards illegally undercompensated workers "twice the full amount of such minimum wage or overtime wage less any amount actually paid to such employee by the employer." Conn. Gen. Stat. § 31-68(a)(1).

While awards of liquidated damages are not mandatory under either statute, "[d]ouble damages are the norm, single damages the exception." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). Under both statutes, the employer has the burden of

---

[20] Doc. #12 at 1 (¶ 3).
[21] Appendix I at 4–5.
[22] Doc. #90-4 at 7.

proving "good faith" to escape payment of liquidated damages. *See* 29 U.S.C. § 260; Conn. Gen. Stat. § 31-68(a)(1). Here, Xia's default means she necessarily cannot establish a good faith belief that underpayment was in compliance with the law. *See Tapia*, 96 F. Supp. 3d at 5. Because Bi seeks total liquidated damages of double her actual damages, I have no cause to consider whether she should receive liquidated damages under both the FLSA and the CMWA. *See ibid.* (noting split of authority on this issue). Accordingly, I will award Bi an additional $25,822.15 for liquidated damages.[23]

### Civil penalty

Bi also seeks the imposition of a $300 civil penalty.[24] But the statute is clear that an employer who violates the CMWA "shall be *liable to the Labor Department* for a civil penalty of three hundred dollars for each violation." Conn. Gen. Stat. § 31-69a(a) (emphasis added). This statute does not create a private right of action and thus is inapplicable here. Accordingly, I will not award a $300 civil penalty to Bi.

### Attorney fees and costs

Finally, Bi seeks an award of $52,467.50 in attorney fees and $1,070 in costs.[25] The FLSA and CMWA each provide for the award of attorney fees and costs to prevailing plaintiffs. *See* 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68(a)(1). In calculating attorney fees, the Court must first determine a presumptively reasonable fee based on a "lodestar" calculation of a reasonable hourly rate and the number of reasonably expended hours. *See, e.g.*, *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014). "The most important factor in determining a reasonable fee for a prevailing plaintiff is the degree of success obtained." *Watrous v. Borner*,

---

[23] Appendix at 6.
[24] Doc. #90-4 at 7.
[25] Doc. #90-5 at 6 (recording attorney fees of $45,117.50 and costs of $551); Doc. #93-1 at 2 (recording attorney fees of $7,350 and costs of $519). I omit from this analysis the $9,217.50 that is included on the invoice from Bi's counsel but was previously awarded by the Court. *See* Doc. #70.

995 F. Supp. 2d 84, 89 (D. Conn. 2014); *see also U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (listing multiple factors to be considered).

In determining a reasonable hourly rate, a court is to consider "what a reasonable, paying client would be willing to pay," assuming the client wishes "to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007). Bi's calculation is based on a rate of $375 per hour for attorney Jian Hang, $150 per hour for law clerk Ge Yan, which increased to $175 in 2022, and $175 per hour for paralegal Yu Zhang.[26] I find these fees reasonable in light of the market, noting that other courts in this District have approved similar rates for FLSA cases. *See Tahirou v. New Horizon Enters., LLC*, 2022 WL 510044, at *8 (D. Conn. 2022) (noting that "[w]ith respect to 'reasonable rates,' courts in this district have generally approved hourly rates of between $300 and $400 for experienced partner-level employment law attorneys"); *Strauch v. Comp. Scis. Corp.*, 2020 WL 4289955, at *8 (D. Conn. 2020) (capping the rates of "[s]taff, such as paralegals," at $195).

In assessing the reasonableness of the hours billed, "courts consider, among other things, the quality of the representation and the complexity of the work." *Wei*, 2022 WL 385226, at *16. I have reviewed the time sheets provided by Bi's counsel and find that—with a few exceptions— they demonstrate the reasonableness of the hours worked.[27] As an initial matter, Attorney Hang accounts for over 75 percent of the 157.6 total hours spent on this matter.[28] The billing records show that Attorney Hang personally performed—that is, he did not delegate to his law clerk or paralegal—tasks such as organizing and serving the Rule 26(f) Report (0.50); organizing files

---

[26] Doc. #80 at 10–11 (¶¶ 48, 50–51); Doc. #93 at 4 (¶¶12, 14).
[27] *See* Docs. #90-5, #93-1.
[28] *See* Doc. #80 at 10 (¶ 47); Doc. #93 at 3–4 (¶ 11). I arrived at this figure by dividing the total number of hours Attorney Hang billed (123) by the total number of hours his firm spent on the matter (161.5).

(0.50); researching case history and looking for affidavits and the docket number (1.0); and preparing text message transcripts (1.40).[29]

In a "relatively straightforward [wage and hour] case, staffing the case in such a matter warrants an across-the-board adjustment in the number of hours billed." *Id.* at *20; *see Tahirou*, 2022 WL 510044, at *8 (noting that courts have reduced attorney fee claims "when the claimant could not adequately defend the reasonableness of the distribution of the work between partners, associates and paralegals"). Moreover, the billing records contain a few unwarranted or excessive entries, including a cumulative 4.9 hours that Attorney Hang spent drafting his declaration over the course of three days.[30] Finally, Attorney Hang spent time on tasks, such as drafting and revising jury instructions (1.40), when it was unclear that there would be a future need for this work product.[31]

Courts "have applied reductions, often between 15 to 30 percent, to account for issues like vagueness in counsel's time records, and the resulting inability of the Court to assess the reasonableness of counsel's hours" as well as "where it appears, for other reasons, that the time expended by counsel was excessive." *Ge Chun Wen v. Hair Party 24 Hours Inc.*, 2021 WL 3375615, at *24 (S.D.N.Y. 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 2767152 (2021); *see also Strauch*, 2020 WL 4289955, at *11 (applying an across-the-board reduction of 12 percent to attorney fees). Here, for the reasons described above, I cannot conclude that the expended time was entirely reasonable. Accordingly, I will impose an across-

---

[29] Doc. #90-5 at 3, 6.
[30] *Id.* at 7.
[31] *Id.* at 5. Attorney Hang drafted and revised the jury instructions on January 20, 2023 when the case schedule was still clearly in flux; indeed, a July 10, 2023 deadline for submission of jury instructions—over six months from the drafting—would not be set until February 9, 2023. *See* Doc. #62.

9

the-board reduction of 10 percent to the attorney fees sought and award Bi $47,220.75 in attorney fees.

Finally, Bi seeks an award of costs incurred by her counsel. An award of attorney costs may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). I will therefore award Bi her counsel's reasonable costs, namely the cost of filing this suit, the cost of serving the complaint, and translation services.[32]

Accordingly, I will award Bi $47,220.75 in attorney fees and $1,070 in costs.

## Conclusion

For the reasons set forth above, the Court GRANTS with modification Bi's supplemental motion for default judgment and an award of damages and attorney fees and costs against Xia (Doc. #80). The Clerk of Court is directed to enter judgment in favor of Bi in the following amounts:

1. Bi is awarded $51,644.30 (consisting of $3,720.76 in unpaid regular wages and $22,101.39 in overtime wages, plus liquidated damages of $25,822.15);

2. Bi is further awarded attorney fees and costs of $48,290.75 (consisting of $47,220.75 in attorney fees and $1,070 in costs).

It is so ordered.

Dated at New Haven this 3d day of January 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[32] Doc. #90-5 at 7; Doc. #93-1 at 2.